HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EMMELINE M. HEDENBURG, a single person,

Plaintiff,

v.

ARAMARK AMERICAN FOOD SERVICES, INC., a for-profit corporation,

Defendant.

Case No. CV06-5267 RBL

ORDER GRANTING DEFENDANT ARAMARK'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF HEDENBURG'S MOTION TO STRIKE PLEADINGS

I. SUMMARY

This matter comes before the Court on Defendant Aramark Educational Services, Inc.'s[1] Motion for Summary Judgment (Dkt. No. 25) and Plaintiff Hedenburg's Motion to Strike Pleadings (Dkt. No. 33). Aramark argues Hedenburg has not established a prima facie case on any of her claims. Even if she had, Aramark claims it had a legitimate reason to terminate her employment.

Hedenburg moves to strike Craig Ward's Declaration as inadmissible hearsay. Having reviewed the parties' submissions, the Court determines that oral argument is not necessary for the disposition of this motion. For the reasons set forth below, the Court hereby GRANTS Aramark's Motion and DENIES Hedenburg's Motion.

---

[1] Aramark Educational Services, Inc. was incorrectly designated as Aramark American Food Services, Inc., in the original Complaint.

ORDER GRANTING ARAMARK'S MOTION FOR SUMMARY JUDGMENT
Page - 1

## II. BACKGROUND

The following alleged facts are set forth in a light most favorable to the non-moving party: Aramark provides food service for educational institutions. Hedenburg began work for Aramark when it took over at Evergreen State College in early fall of 2004. Aramark originally hired Hedenburg as a cook but soon promoted her to Night Shift Supervisor. In August 2004, Hedenburg attended Aramark's orientation, where she acknowledged receipt of Aramark's Employee Handbook. During the orientation, she also signed documents acknowledging her (1) future compliance with Aramark's personnel policies and procedures; (2) review of the Employee Handbook; (3) compliance with the Aramark "Business Conduct Policy"; and (4) future clarification of these policies, if necessary. (Hedenburg Dep. at 96.)[2]

Aramark's policy prohibits managers from dating subordinates. The Handbook's "Fraternization policy" states, in part: "Aramark reserves the right to eliminate reporting relationships in situations where a personal relationship may create a conflict of interest in the workplace, e.g., employees who are dating, roommates, etc." (*Id*. Ex. 3 at 9.) The "Business Conduct Policy" also contains a detailed section entitled, "Personal Relationships Between Managers and Subordinates." (*Id*. Ex. 4 at 23-24.) This section provides that a manager may not maintain a dating or intimate relationship with an Aramark employee when the employee works directly for the manager or the manager has compensation or performance review input with respect to the employee. According to Aramark's policy, the manager must immediately inform his or her manager and Human Resources of the existence of such relationship.

Hedenburg was promoted to Night Shift Supervisor shortly after she was hired as a cook. Aramark originally appointed Jeremy Kraft to the newly created position, but Hedenburg, using Aramark's Open-Door Policy, notified management that she should be considered for the job. Aramark agreed and promoted her to Night Shift Supervisor, where she supervised a staff of her former peers.

Hedenburg struggled to enforce company policy because of her friendships with her subordinates. Her friendship with one subordinate, Kyle Galloway, evolved into an intimate relationship. Believing that her

---

[2] The Court will not consider portions of Plaintiff's recent Affidavit in which her statements directly contradict her prior deposition testimony. *See*, *e.g.*, *Lopez v. General Motors Corp.*, 697 F.2d 1328, 1333 (9th Cir. 1983) ("We do not take kindly to counsel's having [plaintiff] attempt, in a declaration in support of her own motion for reconsideration, to repudiate or contradict her own sworn deposition testimony.") Similarly, the Court generally does not consider improper opinion testimony, speculation, and legal conclusions. *See* Fed. R. Evid. 601 and 701; *Evangelista v. Inlandboatmen's Union of Pac.*, 777 F.2d 1390, 1398 n.3 (9th Cir. 1985).

ORDER GRANTING ARAMARK'S MOTION FOR SUMMARY JUDGMENT
Page - 2

superiors probably knew of her relationship, Hedenburg did not disclose the relationship as required by the company policies. Either just before or during her romantic involvement with Galloway, Hedenburg awarded him the "Employee of the Month" bonus. Hedenburg gave the award to Galloway despite Jeremy Kraft being the more obvious choice. She modeled her decision to go with a less obvious employee on another supervisor's choice to award a less obvious employee.

In March 2005, Hedenburg "bl[ew] her top" and "ranted" about Executive Chef, Jeff Sisson, in front of her subordinates. (Hedenburg Dep. at 149-50.) Shortly thereafter, Hedenburg met with then-assistant director Craig Ward and then-director Paul Magnant, who advised her that if her behavior continued, it would "lead to further disciplinary actions up to and including termination." (Ward Decl. Ex. 6 (disciplinary write-up).) During Hedenburg's time as supervisor, Ward made comments to her that she feels were inappropriate. Ward once commented that Hedenburg was "a feminist." In the same conversation, Ward asked, "Is rape ever ok?" Hedenburg believes he was joking around, and she does not remember the context of the statements. Ward recalls the conversation was about an Evergreen student group against rape, and he asked rhetorically, "Is rape ever ok?"

In April 2005, Hedenburg's shift was allegedly operating inefficiently, so Aramark sent her to Chicago for managerial training. Aramark paid her travel, food, and hotel expenses. In her absence, a student took over the role of supervisor for the night shift, and by all accounts, the kitchen operated much more efficiently, concluding operations at an earlier hour. After Hedenburg's return, Ward received multiple complaints about Hedenburg's performance.[3] The complaints that Ward received involved the following: (1) Hedenburg confronted staff about the efforts they had put forth while she was in Chicago, accusing them of making her look bad; (2) she used profanities and told the staff she hated them, she wanted to write them up, and that they "suck"; (3) she discussed her failed romance to Galloway with other staff members; and (4) she belittled Galloway in front of customers.

Hedenburg later came to Ward to tell her that the staff was "trying to cook something up" against her, because she was attempting to uphold company policies. (Hedenburg Dep. at 159-61.) Hedenburg does not

---

[3]Much of Ward's Declaration is based on his personal knowledge, and much of the rest falls under one or more exceptions to the hearsay rule. The Court relies on Ward's recollection of what he was told by others for Ward's then-existing state of mind, and not for the truth of the matter(s) asserted. The Court therefore DENIES Plaintiff's Motion to Strike this evidence.

ORDER GRANTING ARAMARK'S MOTION FOR SUMMARY JUDGMENT
Page - 3

deny using extreme profanities in her discussion with Ward, exclaiming that the crew was trying to get her "f—ing fired and that it was f—ing bulls–t." (Ward Decl. ¶ 17.) Not long after, on May 5, 2005, Aramark notified Hedenburg of her termination. According to Hedenburg, three others were terminated around the same time, all of whom were men. (Hedenburg Dep. at 171.)

### III. DISCUSSION

**A. <u>Summary Judgment Standard</u>**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answer to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the non-moving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy Corp.*, 68 F.3d at 1220.

**B. <u>Plaintiff has Failed to Establish The Essential Elements of a Prima Facie Case of Gender Discrimination for Plaintiff's "Delayed" Promotion or Termination under Title VII and RCW 49.60</u>**

Title VII and RCW 49.60 both employ a burden shifting scheme in order to determine whether gender discrimination took place in an employee's non-promotion or termination.

*1. Burden-Shifting Scheme Under Title VII and RCW 49.60*

Hedenburg's federal and state claims are analyzed under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Kastanis v. Educ. Employees Credit Union*, 122 Wash.2d 483, 490 (1993). In *McDonnell Douglas*, the Supreme Court articulated a three-part test for assessing the burdens and order of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. Second, if the

plaintiff succeeds in demonstrating a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* Third, should the defendant carry this burden, the plaintiff then has an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination. *Id.* at 804. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25 (1978).

2. *Plaintiff has not Established a Prima Facie Case for Gender Discrimination with regard to her "Delayed" Promotion*

"For a prima facie case, [Hedenburg] must offer evidence that 'give[s] rise to an inference of unlawful discrimination,' either through the framework set forth in *McDonnell Douglas*[4] or with direct or circumstantial evidence of discriminatory intent." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2004) (citing *McDonnell Douglas*, 411 U.S. 792 and *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1148 (9th Cir. 1997)); (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). For the Plaintiff to prove her prima facie case, she must prove: (1) she is a woman; (2) she applied and was qualified for an open kitchen supervisor position for which Aramark was seeking applicants; (3) despite her qualifications, she was rejected; and (4) after her rejection, the kitchen supervisor position remained open and Aramark continued to seek applicants from persons of Plaintiff's qualifications. *See McDonnell Douglas*, 411 U.S. at 802.

Plaintiff Hedenburg is a woman and thus satisfies the first element. In establishing the second element, Hedenburg let it be known that she was qualified for the supervisor position and that she would like to be considered for it. Regardless of Aramark's brief appointment of Jeremy Kraft to the position, no issue of material fact exists as to whether Hedenburg was rejected for the position as required by the third element. Hedenburg did in fact get the promotion as soon as she expressed interest in it. Hedenburg cannot establish all the elements of gender discrimination with regard to her "delayed" promotion. Hedenburg's failure to establish these elements makes any further discussion of the burden shifting unnecessary..

---

[4] Under *McDonnell Douglas*, unlawful discrimination is presumed if the plaintiff can show that "(1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) other employees with qualifications similar to her own were treated more favorably." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (citing *McDonnell Douglas*, 411 U.S. at 802.)

*3. Plaintiff has not Established a Prima Facie Case for Gender Discrimination with regard to Her Termination*

Applying the *Vasquez* framework, Hedenburg fails to establish even an inference that gender discrimination played a role in her termination from Aramark. Hedenburg provides no direct evidence of discriminatory intent. When asked about what evidence she might have about Ward's gender discrimination, Hedenburg replies that there just "doesn't seem to be any other explanation." (Hedenburg Dep. at 144.) Hedenburg's sense that she can just "sort of feel" men's general prejudice against women does not establish a prima facie case. (*Id*. at 131.)

Hedenburg's circumstantial evidence also falls short of giving rise to an inference of discriminatory intent. Hedenburg speculates that Ward's reason for firing her was because he "wanted to have a management team full of his buddies." (*Id*. at 170.) Hedenburg followed this statement by describing how Ward fired three men at nearly the same time she was terminated, weakening her own claim that she was wrongfully terminated based on gender. Ward's isolated comments with regard to Hedenburg being a "feminist" and asking "if rape is ever ok" do not provide sufficient circumstantial evidence as to give rise to an inference of gender discrimination, particularly in light of the fact that Ward fired similarly situated men at the same time. Hedenburg has simply not provided the Court with sufficient evidence of gender discrimination in Aramark's dealings with her.

The Court will still presume unlawful discrimination if Hedenburg can satisfy the *McDonnell Douglas* test provided in footnote 3. Hedenburg is a member of a protected class, satisfying the first element. She was terminated and thus suffered an adverse employment action, in satisfaction of the third element. Other than Hedenburg's subjective review of her performance, there is no evidence showing Hedenburg was performing up to Aramark's expectations as required by the second element. In fact, the record reveals that she violated numerous Aramark policies, evidenced primarily by her relationship with one of her subordinates. Hedenburg has not established the second element of the test and no issue of fact remains with regard to that element. Further, Hedenburg has not established the fourth element because other supervisors and similarly qualified people were also terminated, showing they were treated no more favorably than her. Plaintiff has failed to establish a prima facie case of gender discrimination with regard to her termination.

### 4. *Even if Plaintiff Established a Prima Facie Case of Gender Discrimination, Defendant had a Legitimate, Non-discriminatory Reason for Her Termination*

Hedenburg's claim fails because even assuming that she can make out a prima facie case under the *McDonnell Douglas* framework or otherwise, she cannot establish that Aramark's articulated, non-discriminatory reason for her termination is pretextual. *Cf. Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 n. 8, 1063-64 (9th Cir. 2002) (assuming without deciding that plaintiff made out a prima facie case of discrimination but affirming district court's grant of summary judgment against plaintiff because she did not show that the employer's non-discriminatory explanations for her termination were pretextual).

Aramark presented numerous legitimate, non-discriminatory reasons for its decision to terminate Hedenburg, including the following: (1) Hedenburg's undisclosed relationship with her subordinate; (2) her use of profanity amongst her managers, staff, and customers; (3) her disparaging remarks in front of subordinates with regard to Aramark's management; and (4) her inability to operate as efficiently as her substitute was capable of doing while she was in Chicago. In order for her to overcome summary judgment on this issue, Hedenburg must prove that Aramark's reasons are pretextual. *Cordova*, 124 F.3d at 1148. Hedenburg "can show pretext directly, by showing that discrimination more likely motivated [Aramark], or indirectly, by showing that [Aramark's] explanation is unworthy of credence. *Vasquez*, 349 F.3d at 641 (citing *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1127 (9th Cir. 2000).

"A showing that [Aramark] treated similarly situated employees outside [Hedenburg's] protected class more favorably would be probative of pretext." *Id.* (citing *Gerdom v. Cont'l Airlines, Inc.*, 692 F.2d 602, 609 (9th Cir. 1982) (en banc)). In her deposition, Hedenburg discussed the fate of several other managers who reported to Ward, all of whom Ward fired, and all of whom were men and therefore outside her protected class. (Hedenburg Dep. at 171.) This hardly amounts to more favorable treatment of these similarly situated employees and tends to negate any evidence of pretext on the part of Aramark.

Hedenburg, as discussed above, has not submitted any direct evidence that Aramark was motivated by discriminatory intent.[5] Hedenburg's accounts of being called a feminist and being asked if rape is ever ok do not reach the factual threshold of sufficient direct evidence of discriminatory intent. Hedenburg has also failed

---

[5]*Cf.Chuang*, 225 F.3d at 1128 (finding direct evidence of pretext on the part of employer where member of decisionmaking body stated that "two chinks . . . were more than enough" (internal quotation marks omitted).

ORDER GRANTING ARAMARK'S MOTION FOR SUMMARY JUDGMENT
Page - 7

to show that Aramark's explanations lack credibility. Hedenburg is unable to show that Aramark's reason for her termination was a pretext for discriminatory intent. Accordingly, the Court grants summary judgment in favor of Defendant with regard to Plaintiff's claim of gender discrimination.

**C. Plaintiff's Hostile Work Environment Claim Fails Because She Was Not Subject to a Hostile Work Environment That Altered a Term or Condition of Her Employment.**

In order to establish a prima facie case of a hostile work environment based on gender under either Title VII or the Washington State Law Against Discrimination ("WLAD"), codified at RCW 49.60.010 *et seq.*, Plaintiff must show: (1) that she was subjected to verbal or physical conduct of a sexual nature; (2) that the conduct was unwelcome; and (3) that the harassment was sufficiently severe or pervasive to alter the terms or conditions of employment and create an abusive work environment. *Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir. 1998).

In determining whether conduct was sufficiently severe or pervasive to violate Title VII or the WLAD[6], the Court looks at "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (internal quotation marks and citation omitted), *reh'g denied*, 533 U.S. 912 (2001). Moreover, the "working environment must both subjectively and objectively be perceived as abusive." *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000) (internal quotation marks and citation omitted). Ward's described conduct, even taken in the light most favorable to Plaintiff, was not severe or pervasive enough to constitute a hostile work environment. Therefore, Ward's conduct did not violate Title VII or the WLAD.

Hedenburg presents only a few specific examples of possible harassment. The foundation of her claim seems to be the conversation she had with Ward on the drive home from a bar, in which Ward called her "a feminist" and asked her, "is rape ever ok?" Even assuming the worst possible context for these comments, in comparison to other hostile work environment cases, the events in this case are not severe or pervasive enough to violate the applicable laws.

In *Brooks v. City of San Mateo*, for example, the Ninth Circuit found that no hostile work environment

---

[6]In interpreting the WLAD, Washington courts rely upon cases interpreting Title VII. *Woods v. Graphic Comm.*, 925 F.2d 1195, 1199 (9th Cir. 1991); *Xieng v. Peoples Nat'l Bank*, 120 Wash.2d 512, 518 (1993).

ORDER GRANTING ARAMARK'S MOTION FOR SUMMARY JUDGMENT
Page - 8

existed where a fellow employee pinned plaintiff against a chair and reached under her sweater and bra to fondle her breasts. *Id*. The Ninth Circuit also did not find a hostile work environment to exist where a supervisor called female employees "castrating bitches," "Madonnas," or "Regina" on several occasions in front of plaintiff. *Kortan v. California Youth Authority*, 217 F.3d 1104, 1107 (9th Cir. 2000). The Court called the behavior offensive but did not find it pervasive or severe enough to unreasonably interfere with the plaintiff's employment. *Id.* at 1111.

In comparison to these cases, the conduct complained about by Hedenburg did not create an abusive work environment. The supposedly harassing conduct was less frequent and less severe than that of either of the two cases above. In light of the Ninth Circuit's findings from the above cases, the isolated remarks made by Ward cannot be severe or pervasive enough to create a hostile work environment. Accordingly, the Court grants summary judgment in favor of Defendant with regard to Plaintiff's claim of a hostile work environment.

**D. Plaintiff's Retaliation Claim Fails Because She Fails to Establish a Causal Link Between Her Termination and Her Complaint with regard to Being Passed Over for the Supervisor Position.**

Title VII and the WLAD protect the right to speak out against forbidden discrimination by endorsing retaliation as a cause of action. To establish a prima facie case for a retaliation claim under Title VII and the WLAD, Hedenburg must show : (1) that she engaged in a protected activity; (2) that she suffered an adverse employment action; and (3) that there is a causal link between the two. *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994). Hedenburg satisfies the first two elements. She (1) used Aramark's Open-Door Policy to complain that it was unfair and discriminatory for her not to be considered for the Night Shift Supervisor position and (2) she was terminated.

However, Plaintiff fails to establish a causal link between the two. The protected activity occurred more than seven months before the adverse employment action. Aramark's legitimate, non-discriminatory reasons for terminating Hedenburg all arose after the protected activity and after her subsequent promotion. Even after Hedenburg received discipline from Ward and Magnant in March 2005 for her ranting in front of subordinates, she was given an all-expense paid training trip to Chicago, suggesting that Aramark was still investing in her. Hedenburg has simply not provided any evidence showing a retaliatory motive on the part of Aramark. Furthermore, Hedenburg has failed to show that Aramark's proffered reasons for her termination were pretextual. Accordingly, the Court grants summary judgment in favor of Defendant with regard to Plaintiff's

claim for retaliation.

**E. Plaintiff Fails To Address the Elements of Wrongful Discharge in Violation of Public Policy.**

Hedenburg fails to address any of the elements of her claim for wrongful discharge in violation of public policy. For the reasons outlined above, this claim does not appear to have merit. Accordingly, the Court grants the Motion for summary judgment and dismisses Hedenburg's claim for wrongful discharge in violation of public policy.

**F. Plaintiff Fails to Respond to Defendant's Motion with regard to Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress.**

Hedenburg also "makes no response to the Motion related to intentional infliction of emotional distress or negligent infliction of emotional distress." (Pl.'s Resp. 8:14-15, Feb. 5, 2007.)  Under Local Rule 7, the Court deems Plaintiff's lack of response as a concession that the Defendant's Motion has merit. Accordingly, the Court grants Defendant's motion for  summary judgment on Plaintiff's claims for both intentional and negligent infliction of emotional distress.

## IV. CONCLUSION

For the reasons discussed above, the Court GRANTS Defendant's Motion for Summary Judgment (Dkt. No. 25) as to all claims because no genuine issue of material fact remains. As discussed in the third footnote above, the Court DENIES Plaintiff's Motion to Strike Pleadings (Dkt. No. 33). Plaintiff's claims are DISMISSED with prejudice.

DATED this 1st of March, 2007.

　　　　　　　　　　　　　　　　　　RONALD B. LEIGHTON
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE